# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1557 | **DATE** | 7/8/2004 |
| **CASE TITLE** | Maimonis et al vs. Urbanski et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 5-1) to dismiss the complaint, in its entirety, is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 12 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| SCT | courtroom deputy's initials | 2004 JUL -8 AM 10:55 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE MAIMONIS and DENNIS SAMUEL MAIMONIS, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | 04 C 1557 |
| PHILLIP URBANSKI, LINDA YONKE, DAVID CREECH, JEFFREY HARTMAN, DIANA MUELLER, JOEL MORRIS, YORK COMMUNITY HIGH SCHOOL, ILLINOIS SCHOOL DISTRICT 205, and ELMHURST COMMUNITY UNIT SCHOOL DISTRICT NUMBER 205, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the unopposed motion to dismiss of Defendants Elmhurst Community Unit School District 205 ("District 205"), Philip Urbanski ("Urbanski"), Linda Yonke ("Yonke"), David Creech ("Creech"), Jeffrey Hartman ("Hartman"), Diana Mueller ("Mueller"), and Joel Morris ("Morris") (collectively "Defendants"). For the reasons set forth below, the motion is granted.

## BACKGROUND

Because this is a motion to dismiss, we accept all well pleaded facts and allegations in the complaint as true and construe all inferences in favor of the Plaintiff. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Furthermore, because the Plaintiff is a *pro se* litigant, this court will employ a more liberal standard of review than would otherwise be used. Haines v. Kerner, 404 U.S. 519, 520 (1972).

Plaintiff Catherine Maimonis ("Catherine") is a student at York Community High School ("York High"), which is part of District 205.[1] On the morning of December 8, 2003, Urbanski, a dean at York High, removed Catherine from her first period class as part of a search for illegal drugs.[2] Urbanski informed Catherine that she was suspected of possessing drugs and that if she did not consent to a search of her

---

[1] York High is a named defendant in this case but was not included as a party to the present motion to dismiss. However, because Plaintiffs' complaint alleges that York High is a wholly owned subsidiary of District 205, we will treat the present motion as encompassing York High as well.

[2] As the information contained in this footnote is not alleged in the complaint, we will not utilize it in deciding the present motion, but include it for the sake of clarification. Based on Plaintiffs' in-court representations and documents submitted by Defendants, we take notice that prior to her removal from class, Urbanski had searched Catherine's car after catching her younger sister smoking marijuana inside it. The search revealed several marijuana cigarettes, which prompted Urbanski to question Catherine.

personal property she would be suspended from school for a week. Catherine refused and was then suspended for one week. When Catherine asked for a hearing before District 205's board, the request was denied.

On February 27, 2004, Catherine and her father filed a *pro se* suit against Defendants alleging violations of 42 U.S.C. § 1983 ("Section 1983") and various state law claims including deprivation of education, false imprisonment, kidnaping, and violations of the Illinois Constitution. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (citing Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these considerations in mind, we now turn to the present motion.

## DISCUSSION

Catherine's Section 1983 claims, filed against all Defendants, allege violations of her Fourth, Fifth, and Fourteenth Amendment rights in regard to the search of her car and the subsequent suspension she received. When a public official is a defendant in a Section 1983 action, the court assumes that the defendant is being sued in his official capacity only, unless the complaint expressly states an intent to sue the defendant in his personal capacity as well. Meadows v. State of Indiana, 854 F.2d 1068, 1069 (7th Cir. 1988). However, because *pro se* litigants are not held to the same "stringent standards" as lawyers, a *pro se* Section 1983 plaintiff will not be precluded from suing a defendant in his personal capacity simply because the complaint fails to indicate the capacity in which the defendant is being sued. See Abdul-Wadood v. Duckworth, 860 F.2d 280, 287 (7th Cir. 1988) (overturned on other grounds, Wallace v. Robinson, 940 F.2d 243 (7th Cir. 1991)). We will accordingly examine Catherine's Section 1983 claims under both official and personal capacity frameworks.

An official capacity suit against government employees is treated in all respects as one suit against the municipality. See Leahy v. Board of Trustees of Community College District No. 508, 912 F.2d 917, 922 (7th Cir. 1990). In order for a municipality to be liable under Section 1983, the plaintiff must demonstrate that a municipal policy or custom caused a deprivation of constitutional rights. Monell v.

-4-

Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978). A plaintiff can establish a municipal policy or custom in one of three ways: proving that an express municipal policy caused the alleged constitutional deprivation, demonstrating that a municipality's widespread practice constituting custom or usage caused the deprivation, or showing that the deprivation was caused by a person vested with final policymaking authority. Kujawski v. Board of Commissioners of Bartholomew County, 183 F.3d 734, 737 (7th Cir. 1999).

Catherine's complaint does not allege that the events leading to her suspension from school were the result of any express municipal policy, ordinance, regulation, or decision officially promulgated by District 205. See Jones v. City of Chicago, 787 F.2d 200, 204 (7th Cir. 1986) (citing Monell, 436 U.S. at 690). Nor does she claim that the violations in question stemmed from a governmental custom, which we interpret as "a habitual practice or a course of action that characteristically is repeated under like circumstances." Jones at 204. In fact, as stated in the complaint, Urbanski's[3] actions fell outside of his job description, which indicates that he behaved contrary to District 205 policy or custom. For this reason, even under the liberal pleading standard

---

[3] Urbanski is the only individual defendant specifically referenced as committing a constitutional violation.

afforded to *pro se* plaintiffs, Catherine fails to allege that Urbanski's conduct was sanctioned by York High, District 205, or any municipal policy or custom.

Under Monell and its progeny, the remaining avenue to plead official capacity liability is by alleging that Urbanski had final policymaking authority. In making this determination, we look to state law to ascertain whether an individual is considered a final policymaker. Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986). In Illinois, the final decision-making authority of a public school district generally is held by the board of education or the district's superintendent. 105 ILCS 5/10-21.4. The Seventh Circuit has reasoned that a lower level school official, such as a disciplinary dean, could potentially possess final policymaking authority via a delegation from the school board, even though such a delegation cannot be found anywhere in the Illinois School Code. Cornfield v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1325-26 (7th Cir. 1993). However, absent an express, implied, or customary delegation of authority, we should not infer that a high school dean possesses the requisite policymaking responsibility for municipal liability to attach to his actions. Id. Catherine's complaint contains no formal contention that Urbanski possessed final policymaking authority of any kind (let alone on disciplinary matters) nor can one be detected from a generous reading of the complaint as a whole. Furthermore, by contending that Urbanski was under the direction and control of District 205, the

complaint's own allegations preclude any inference that Urbanski possessed policymaking authority under the Monell standard.

Because the complaint fails to plead that the purported constitutional violations were the result of a municipal policy or custom, Catherine's Section 1983 claims against District 205, York High, and all individual defendants in their official capacity are dismissed. However, our Section 1983 analysis does not end here as we must next consider whether any of the defendants are liable in their personal capacities.

In order to establish the personal liability of an official sued under Section 1983, a plaintiff must allege that the official caused the deprivation of a federal right. Luck v. Rovenstine 168 F.3d 323, 327 (7th Cir. 1999). An official causes such a deprivation if he directly participates in the deprivation or if he sets in motion a series of events where he should have reasonably foreseen that others would deprive the plaintiff of his federal rights. Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988). While the complaint alleges that Yonke, Creech, Hartman, Mueller, and Morris are "all involved in [t]his action to some extent,"[4] the constitutional violations either expressly cited or alluded to were all perpetrated by Urbanski. We therefore dismiss the personal

---

[4] This reference in Paragraph 4 is the only time the complaint mentions these defendants.

capacity Section 1983 claims against the above defendants and will focus on whether the claims against Urbanski can survive this 12(b)(6) motion.

Even though she does not evoke the Fifth Amendment by name, Catherine first contends that Urbanski deprived her of her right against self-incrimination by insisting that she waive her legal rights by consenting to a search of her personal property. Contrary to Defendants' assertion that the Fifth Amendment does not apply to school disciplinary proceedings, the privilege against self-incrimination may be asserted in any forum, as "it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used." Murphy v. Waterfront Comm'n, 378 U.S. 52, 94 (1964) (overturned on other grounds, U.S. v. Balsys, 524 U.S. 665, 688 (1988)). Despite the fact that Catherine remained protected by the Fifth Amendment after she was pulled from class by Urbanski, a close review of her complaint reveals that Urbanski did not demand that she make an incriminating statement. Catherine alleges that Urbanski told her that he was looking for illegal drugs and informed her that she would be suspended if she did not consent to a search. While such an ultimatum could potentially support a claim of a Fourth Amendment violation (as will be discussed below), "a consent to search is not a self-incriminating statement and, therefore, a request to search does not amount to an interrogation" giving rise to Fifth Amendment protections. U.S. v. Smith,

-8-

3 F.3d 1088, 1098 (7th Cir. 1993). This aspect of her Section 1983 claim against Urbanski is thus dismissed.

Catherine next contends that Urbanski violated her Fourth Amendment rights by searching her car without a warrant and without probable cause. She also charges that he demanded that she consent to a search of her personal property "for reasons other than the security of the school." In spite of Catherine's claims, the Constitution is not automatically violated when a school search lacks probable cause. Willis v. Anderson Community Sch. Corp., 158 F.3d 415, 418 (7th Cir. 1998). Instead, "such a search is permissible if it is both 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" Bridgman v. New Trier High Sch. Dist., 128 F.3d 1146, 1149 (7th Cir. 1997) (quotations omitted). A search will be justified at its inception if the student's conduct created a reasonable suspicion that a regulation or law has been violated and the search was intended to produce evidence of the violation. Willis at 418. Catherine does not argue that Urbanski's search or search demand were unreasonable, only that he lacked probable cause. Furthermore, as she argues that Urbanski's search was not related to the security of York High, Catherine admits that Urbanski was looking for illegal drugs (which – though not alleged in the complaint – Urbanski caught Catherine's sister smoking in Catherine's car). Because Catherine fails to allege that Urbanski's search

was unreasonable, while simultaneously pronouncing that the purpose behind the search was drugs on school grounds (in our view, a valid justification for the search), we dismiss her Fourth Amendment claims against Urbanski.

Catherine's remaining constitutional claim under Section 1983 is that her due process rights under the Fourteenth Amendment were violated when she was suspended by Urbanski without being afforded a hearing. The Supreme Court has held that due process, in connection with school suspensions under ten days in length, requires that the student is given oral or written notice of the charges against him and an opportunity to explain his conduct. Goss v. Lopez, 419 U.S. 565, 581 (1975). The Court noted that this requirement is typically satisfied by an informal discussion between the disciplinarian and the student within minutes of the alleged misconduct. Id. at 582. There is nothing in the complaint suggesting that the due process requisites of Goss were not met. Urbanski told Catherine that she was suspected of possessing illegal drugs and that she would be suspended if she did not cooperate. Catherine responded, not by explaining what had happened, but by asserting what she believed was her constitutional right not to comply with Urbanski's requests. Regardless of whether District 205 or York High refused to schedule a subsequent hearing, in which Catherine had no protected right, her complaint fails to allege a Fourteenth Amendment violation so this last component of her Section 1983 claim is dismissed.

Because all of the federal causes of action in Catherine's complaint have been dismissed, we decline to exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(c)(3). <u>Kennedy v. Schoenberg, Fisher & Newman, Ltd.</u> 140 F.3d 716, 728 (7th Cir. 1998).

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss the complaint, in its entirety, is granted.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: JUL - 8 2004